Your Honor, my name is Luther Snavely for Resa Taurine Associates. I'm here on behalf of the petitioner Juan Romero. May it please the court. Romero is not inadmissible for falsely claiming to be to Nevada DMV in 2005 that he was born in Puerto Rico in order to obtain Nevada ID. He's not inadmissible because U.S. citizenship was not a prerequisite to obtaining a Nevada ID card in 2005. In the matter of Richmond, the BIA held that citizenship must objectively, actually, affect or matter to the purpose or benefit sought and equated affect or matter with U.S. citizenship being a prerequisite to the purpose or benefit in order for inadmissibility to be triggered. Here, all an applicant had to do in 2005 to get a Nevada ID was provide proof of name and age. Thus, even providing proof of U.S. citizenship would be insufficient unless that proof of citizenship included proof of name and age. Nevada DMV simply didn't care about U.S. citizenship independent of name and age. Even the BIA at page 5 of the record agreed that U.S. citizenship was not a prerequisite for Nevada ID card. Therefore, Romero is not inadmissible even if the court were to determine that his false claim of birthplace did constitute a false claim of U.S. citizenship. But he does not concede that his false claim of birthplace constituted a false claim of U.S. citizenship pursuant to the plain language of the statute, the false citizenship statute in the INA. In my briefing, I cited to the Ninth Circuit cases of Karomi, Garcia, Jr. and Smiley as support for Romero's position. However, it is true that the Ninth Circuit and the BIA in Valadez-Muñoz and Verstaines-Berrera discounted my three cases because they are criminal cases with a higher burden of proof imposed on the government rather than the alien. But here in this case, the false representation that Romero made on his application is completely undisputed, as is his motive for doing so. And so, what difference does the burden of proof make as to that claim on the application? His false claim of birthplace on his application for the Nevada ID either constitutes a false claim to U.S. citizenship or it doesn't as a matter of law. So, I don't think that the reasoning in Valadez-Muñoz and on the fact that it believed that Romero had filed a false CRBA and isn't that enough apart from the DMV application? But there is an interpretation of, you know, what the DMV, you know, received. Well, the issue there is could a reasonable fact finder conclude that a in the record of evidence? This is a phantom document. It's not in the record. No one involved in this case has ever seen it. The only reason it's a part of this case at all is because of a fragment reference in a one-page DMV memo, which does not identify the document, and in which the words citizen or citizenship don't appear at all. All it says is, report of birth abroad of U.S. document and then a number. That's it. There's no reference in the DMV memo. The reference in the DMV memo doesn't actually ever say that a U.S. citizen was born abroad. Nevada DMV turned over every document that Romero filed with him to USCIS, and yet somehow this document is missing. I guess the, you know, one issue for your client, I guess, is the deferential standard of review we have. If the IJ concluded that the reference to report of birth abroad, you know, the United States, abroad the U.S. meant a CRBA, and, you know, we were just looking for substantial evidence. I mean, isn't that enough? I don't think so. Most of the time it would, but here there's just nothing. Report of birth abroad of U.S. and a number could mean anything. Plus, there's no such thing as a CRBA for Puerto Rico because everyone born there is a U.S. citizen. There's no U.S. embassy or consulate there to issue a document like this. Pardon me. When Romero filed his application with DMV, DMV noted at the bottom of the application which documents Romero provided. That's a 216 and 220 of the CRBA. Given all of that, I don't see how a reasonable fact finder could conclude that Romero filed a CRBA for Puerto Rico with DMV. And so, there is not some substantial evidence to uphold the finding that a CRBA establishes a false claim of U.S. citizenship. Counsel, can I ask about the standard in this case? The BIA suggested that the standard that was applicable, or I guess actually stated the standard that was applicable, was clearly beyond a doubt. You're contesting that, right? You're saying that he should have only been required to show a preponderance of the evidence. But how do you distinguish, or do you just say Lopez Vazquez got it wrong? Because Lopez Vazquez, I mean, it's an interesting case. The panel seemingly agrees with you that it should be preponderance of the evidence, but then says that in our prior cases, we've held that it was clearly and beyond doubt. And so, aren't we bound by Lopez Vazquez? As a three-judge panel here, aren't we bound by Lopez Vazquez, and we therefore have to apply, even if we disagreed with it, we would have to apply clearly and beyond doubt as the legal standard, and that is what the BIA applied here. Well, first of all, the clearly and the burden of proof, I believe, would only apply to the CRBA. The other two questions involved here, whether what he said constituted a false claim of U.S. citizenship, and whether what he said was true. So, if you could win in the sense that we would have to grant the petition if we agreed with some of your preliminary arguments, but if we don't get there, and we say, no, that can be a violation, but the BIA applied the wrong legal standard, do we even have discretion? That's my question to you under Lopez Vazquez, can we even revisit that question? Because I think it's a problem. If you were right, say we agreed with the government on the rest of this case, if the BIA applied the wrong legal standard, we arguably might have to remand this to make sure. I think under administrative law, we can't just affirm on alternate grounds. We would have to actually remand and make sure that the BIA agrees that taking all the facts there, it still satisfies the lower standard. They've said you couldn't meet the higher standard, but they haven't said you couldn't meet the lower standard, and I don't think we can do that independently. But my fundamental question is, can we even go that route in light of Lopez Vazquez? Doesn't that just foreclose your argument? Well, there has to be a way. I mean, if the ruling is clearly wrong on the law, there has to be, and we all agree that it was wrong on the law, and that's wrong on the law. Well, I mean, we'll hear from the government, but I'm not sure that that's right. I mean, I'll be interested in the government's response to that, but I hear them defending, in this case, a clearly beyond a doubt legal standard as the correct legal standard. First of all, tell me why, maybe you could just walk us through, to the extent you can, when we would apply preponderance of evidence versus clearly beyond a doubt. Clearly and beyond a doubt is applied to applicants for admission. Normally, that would be someone applying for admission at the border, or if someone entered the United States illegally and sought adjustment of status, that standard would be applied to someone applying for adjustment of status. And here, Romero had been admitted in the United States, so he was not, and that seems to be different than the Valadez, Munoz, and Blanco cases that Lopez Vazquez relied on. That's correct, Your Honor. He was lawfully admitted, and then was admitted, he's not admitted again when he's approved for adjustment of status. HCFR 1240.8D clearly provides that an applicant for adjustment of status is subject to the preponderance of the evidence standard. And so, that's where, that's where this would apply. So, your point is, your case, in your view, is the exact same as Lopez Vazquez. Your client is seeking relief from removal. I mean, if we find that he, you know, otherwise was eligible for removal, meaning we reject your other arguments, your point is he's seeking relief from removal, and therefore, as Lopez Vazquez suggested, the relevant Okay. Okay, thank you. Do you want to, do you want to reserve for rebuttal? Yes, Your Honor, thank you. Okay, perfect. Ms. Watson? May it please the Court, Your Honors. Mr. Romero has not met his burden of showing that he's inadmissible, and he didn't meet his burden of showing that he did not make a false claim to citizenship. And as to the burden discussing, I mean, I can't say that, I mean, really under this evidence, he hasn't met it, whether it would have been under the preponderance or the clearly beyond a doubt. Okay, so, so I, I agree, I agree with that. The question is, under principles of administrative law, do we have the discretion to decide that? Because normally, if this were coming up to us on summary judgment, and the district court applied the incorrect legal stand, you know, the burden of, incorrect burden, we could say, presumably, hypothetically, we could say they erred on demanding such a high standard. But, you know, even if you applied the lower standard, we would affirm on the alternative, on alternate grounds. But I don't understand the court to have that discretion when it comes to administrative law principles. And so I'm, I'm a bit concerned that even if we agree with that, we might have to remand if we thought that the legal standard were incorrect. You could argue it's a futile remand, but I think technically we might have to, if, if they didn't apply the correct legal standard. I mean, they, they did here, and that's, that's, that's what we're arguing. But, So, the government's position, the government's position is clearly beyond a doubt, is the correct legal standard here. Yes, and that's what this court has applied, that's what the Supreme Court has alluded to. I mean, it's, but I want to drill down on that, because it's, I mean, this is a very, to me, I, I found this to be a very confusing area of the law, trying to unravel it, on when each standard does apply. I, I, I take it the government's position is, look, we need to go no further than Lopez Vazquez. That, Lopez Vazquez ultimately says that under Valdez, Munoz, and Blanco, the clearly and beyond doubt burden of proof is applicable in this context, and seems to apply that burden of proof. Is that an accurate statement of what the government's position is? Yes, but the, I, I also, I'm discussed in the brief, that the East Circuit Curon was, while not binding precedent, of course, it's illustrative of the reasoning. He's put into 240 proceedings, and under section 242, that talks about the burden, it says, it says the alien is an applicant for admission, and he's clearly, his burden is clearly beyond a doubt, showing that he's entitled to be admitted, and not admissible. And when somebody is applying for adjustment of status, they are treated the same, and I cited case law, and I have other cases, that you're treated the same as somebody at the border. So that, that's where that clearly beyond a doubt comes in, to admissibility, which. So you, wait, hold on. So the, your, your position is he was beyond the border. I, I don't, I, I'm, I think I'm missing the link here. When you adjust status, you have. Oh, go ahead, finish. Pardon me. When you adjust status, a prerequisite, this, his case, his, his adjustment application was pre-termitted. We didn't even get to the grace of the Attorney General granting, granting the relief, because he couldn't, he couldn't show that he was admissible to the United States, because of this false claim to U.S. citizenship. So we couldn't get past that, and. Well, hold on a second. I, I, I would see your argument if he wasn't in the United States, and they were saying, well, we're not going to admit you because of a false claim, but he was already in the United States. Right, but somebody even adjusting in the United States is treated the same as somebody seeking the admission, and you have to show that you're not inadmissible. It's a requirement for adjustment, 245. You have to make an application for adjustment. You have to show you're eligible to receive a visa, and, and that you're admissible, and that the visa is showing that you're, proving that you're not inadmissible is a requirement for adjustment, and he couldn't get past that requirement. But I, I, I stress as well that, that the government is definitely relying on the fact that this court has repeatedly said that clearly beyond a doubt. Well, I, so I, I just, I want to drill down on that more, because if you go back to Lopez-Vasquez, it says aliens who are seeking relief from removal by applying for adjustment of status must prove admissibility by a preponderance of the evidence, and it cites to the CFR section 1240.AD. So I, I don't, that seems to contradict what you just said, because you're saying when you apply for an adjustment of status, you're treated as if you're outside of the United States, but that doesn't seem to be what the That's, I have to cite a case law that says that. You, you're saying the Eighth Circuit said, you, you're saying that's what. No, this, this court has said as well that an adjustment applicant is treated the same as somebody from outside of the U.S. coming in, and you still have that requirement of showing that you're not admissible. I can. Okay. But moving on, and I, and I would say that, I mean, the court could say that it doesn't matter, it doesn't necessarily have to make the finding, whether it's clearly beyond a doubt or preponderance of the evidence, if they found that under either standard, he still wouldn't, wouldn't meet his burden. Well, I, I, that's, that's my concern, is I'm not sure we can do that, because we, we're limited to, when, when we're reviewing the petition, we're limited to the, the theory, you know, the theories that are put in by the, the BIA. And so if the BIA applied the wrong legal standard, I'm not sure, I'm not sure we can do what you're suggesting, because we may agree with that. I mean, there's, we get these cases all the time, where we're like, boy, this would have been an easy one to resolve, but we can't do it on our own. We're not, we're not, we don't have plenary authority here. We're reviewing the BIA's decision, and if the BIA didn't state that reason, I don't think, I, I mean, that's the BIA. Or the futility, because if he doesn't meet the burden under either standard. I, I hear you, and we struggle with that all the time. We, we remand a lot of cases that are futile, and we do it because the law demands it, you know. Right. So, that, that's what I'm struggling with here. Right. Moving on to the false claim to citizenship, I, you look at Richmond, you have to show the subjective intent to achieve the purpose or benefit, and the objection, objective portion looks at whether the benefit was, whether the citizenship mattered to the benefit. And here, I mean, he, he, he showed, he wrote down his birth on the application for the identification as, as Puerto Rico, which conveys U.S. citizenship. I mean, he showed birth in 1980, and it's anything, I think, after 1940s, you convey citizenship. So, by, by stating that, and then the certificate of birth abroad, I mean, that was one of the documents listed at the Numbadan DMV as one of the documents taken, and it is issued by the State Department when somebody's born abroad. And it is a little bit confusing as to how he was able to present that, but I really want to preface that this is his burden. He has to prove a negative. He has to prove he didn't do it. This isn't the government in a criminal case that has to show, you know, evidence, put in all this evidence that he committed the crime. He has to show that he didn't. And he was provided an opportunity to inspect the document, and true, that that wasn't in the record, but it was identified by number in the memo. USCIS identified it by number also in the memo. So, it exists, and it was his burden to show that that's not what he submitted. And he simply, he hasn't done that. And the board, as in a similar case where the person stated that they were born in Texas for a passport, you know, they said that that was claiming citizenship. And here, it did matter to the benefit sought. And I, if you look at the timeline of events, it's really, truly interesting that the NTA, when the NTA says that he entered the United States, he was admitted to the United States at the New York border in Champlain, New York on August 26, 2005. Yet, he applied for identification card on April 23, 2005, which was before he admitted and conceded that he had entered the country. And Nevada does not to people, even if he had been within status, he was on a B-2 visa, and Nevada regular, the Nevada statute states that they don't issue identification cards for people that are traveling on visitor visas. So, he had no way of obtaining this card at the time he applied for it. So, the citizenship, showing that he was a citizen by presenting a birth certificate of a citizen and stating birth in Puerto Rico is the only way he was going to get this document. And again, I mean, this is his burden to prove that he didn't do it. And he has not submitted any evidence that this wasn't the document that I submitted or anything like that. And therefore, the agency probably determined that he made a false claim to citizenship for the It truly did matter in this instance. He had no other way of obtaining the card. Do I ask that the court deny the petition for you? Yeah. No, unless there's further questions from the panel, I take it you rest on your briefs at this point. I do, but I'm more than happy to answer any other questions the court has or if you have 28-J on the, of applying whether the court can address the issue of false claim without necessarily stating that clearly beyond a doubt versus preponderance. But again, the court's bound to follow its president, which clearly states clearly beyond a doubt is the proper burden in this case. Okay. Thank you, Counsel. Mr. Snavely, you have some time for rebuttal. Your Honor, Romero was in the U.S. lawfully at the time that he applied for the Nevada ID. He had a B-2 visitor visa, which was valid from August of 2001 to August of 2006. That's at page 123 of the record. Homeland Security stated that he was authorized to apply on February 25, 2006. That's at page 242. He applied for the Nevada ID in April of 2005. Under the Nevada regs at the time, he was eligible for the ID. So telling this lie about Puerto Rico was completely unnecessary. He just didn't know it. And by telling it, he got nothing that he wasn't already eligible for. The reg in question is provided at pages 12 and 13 of my reply brief. Your Honor, Counsel mentioned the Korong case and asked the court to follow that. That is definitely a minority position. There's the Negrete Romero's case out of this circuit, in which the court held that a post-lawful admission alien who was granted adjustment of status and a 212H waiver was not considered to be admitted again. At page 16 of my reply brief, I provide cases from the 2nd, 3rd, 4th, 5th, 6th, 7th, 10th, and 11th circuits, which all agree with Negrete Romero's in this circuit and disagree with the position of the circuit court in Korong. The effect or matter standard that the BIA uses in Richmond does require that U.S. citizenship be a prerequisite for the benefit of SALT. The BIA doesn't use relevant to, it doesn't use materiality, even though it's used that standard in other cases. They use effect or matter for the only time that I'm aware of in Richmond. They compare two circuit court cases in which inadmissibility was triggered in one and not the other. They say that both circuit court cases were decided correctly and that the difference between the two is that in one of them, U.S. citizenship was a prerequisite for the benefit of SALT, and in the other one, it was not. I think that prerequisite is a but-for test, but we really don't even get that far in this case, because Nevada DMV didn't care whether Romero was a U.S. citizen and didn't ask him for proof of U.S. citizenship. For DMV, U.S. citizenship was just beside the point. Your Honors, do you have any additional questions for me? It doesn't look like it, Counsel. If you're concluded, that's fine. I'm concluded, Your Honor. Thank you so much. All of you have a good weekend. Thank you. You as well. Thank you, Counsel, for both your arguments. In this case, we'll submit the Romero case, and we'll move on to our third case set for argument today, Gonzalez Mejia v. Garland, Case No. 17-71455.
judges: Stein, Nelson, Lee